The Honorable Karl Horton, Chair Green County Election Commission Post Office Box 62 Paragould, AR 72451
Dear Mr. Horton:
I am writing in response to your request for an opinion on the following:
 While [A.C.A. §] 14-42-201 is specific about residence upon filing for office, are there extenuating circumstances that would permit a candidate's intent on residence to be sufficient?
RESPONSE
I regret that I am unable to offer a definitive opinion to the question you have posed. The factually specific situations involved must be considered in making such a determination. A finder of fact, such as the circuit court, is the proper avenue to definitively answer this question.
As an initial matter, as I recently stated in Op. Att'y Gen.2006-153, a county board of election commissioners does not have the authority to remove a candidate's name from the ballot when there is a dispute as to the facts or law surrounding the candidate's eligibility. Specifically, I stated:
 First, I will note county boards of election commissioners" do not have the authority to declare a candidate ineligible and remove his name from the ballot when there is a dispute concerning the facts or the law." State v. Craighead County Bd. of Election Comm'rs, 300 Ark. 405, 409, 779 S.W.2d 169
(1989). The proper remedy in such case is a court action for mandamus coupled with a declaratory judgment. Id. See also, Hill v. Carter, 357 Ark. 597, 184 S.W.3d 431 (2004). As I stated in Op. Att'y Gen. 2005-204: "This conclusion follows . . . from the well-established principle that the election commission generally performs a ministerial function in preparing and furnishing the ballots. See State v. Craighead County Board of Election Commissioners, supra (stating that such commissions' actions are ministerial only).
Id. Consequently, a court action must be instituted if there is to be a determination that a candidate is ineligible for the ballot.
You have referenced the residency requirements in A.C.A. §14-42-201, which states in pertinent part:
 (c)(1) In addition to other residency requirements imposed by state law for municipal office holders, candidates for the position of mayor . . . must reside within the corporate municipal limits at the time they file as candidates and must continue to reside within the corporate limits to retain elective office.
Id. (Emphasis added.)
As I have previously stated in Op. Att'y Gen. 2004-203:
 The term "residence" as a qualification for office holding is generally deemed to denote "domicile." As one of my predecessors noted in Ark. Op. Att'y Gen. No. 2002-105:
 . . . [S]tatus for office-holding purposes is determined by the officer's domicile. See A.C.A. § 7-5-201(b) (conditioning voter residence on domicile); Valley v. Bogard, 342 Ark. 336, 345, 28 S.W.3d 269 (2000), citing Charisse v. Eldred, 252 Ark. 101, 102-03, 477 S.W.2d 480, 480 (1972) (equating "residence" with "domicile" in determining the qualifications of a public official). Generally, "residence" ordinarily means physical presence within the jurisdiction while "domicile" also includes the subjective intent to maintain one's permanent home in the jurisdiction. Hogan v. Davis, 243 Ark. 763, 422 S.W.2d 412 (1967). A person may have two places of residence, but only one domicile. The Arkansas Supreme Court has stated that "domicile" is dependent to some extent upon the intention of the person involved. Charisse v. Eldred, supra, citing Phillips v. Melton, 222 Ark. 162, 257 S.W.2d 931
(1953); Ptak v. Jameson, 215 Ark. 292, 220 S.W.2d 592 (1949); Wilson v. Luck, 201 Ark. 594, 146 S.W.2d 696 (1941); and Wheat v. Smith, 50 Ark. 266, 7 S.W. 161 (1887). See also Pike Co. Sch. Dist. No. 1, supra; Op. Att'y Gen. Nos. 95-222A and 92-112. The determination of a person's domicile is a question of fact in each instance. Phillips v. Melton, 222 Ark. 162, 257 S.W.2d 931 (1953).
 In Ark. Op. Att'y Gen. No. 95-057, one of my predecessors observed:
 [W]here residence is synonymous with "domicile," it generally means "that place where a man has his true, fixed, and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning. . . . The permanent residence of a person or the place to which he intends to return even though he may actually reside elsewhere." Black's Law Dictionary 435 (5th ed. 1979)." Residence" on the other hand, as distinguished from" domicile," ordinarily signifies living in a particular locality without necessarily the intent to make it a fixed and permanent home. "Residence" is defined in Black's as "[p]ersonal presence at some place of abode with no present intention of definite and early removal and with purpose to remain for undetermined period, not infrequently, but not necessarily combined with design to stay permanently." Id. at 1176.
Id. at 3-4.
Your question with regard to A.C.A. § 14-42-201 is "whether there are any extenuating circumstances that would permit a candidate's intent on residence to be sufficient."
In response to this question, I can only reiterate the conclusion of my previous opinion that only a finder of fact can make a determination on the totality of the circumstances of whether residency requirements are met. The final determination of whether A.C.A. § 14-42-201(c)(1) would be interpreted as requiring "domicile" or "residence" and whether a particular candidate has met that standard can only be resolved by a court, which in any event is the only entity that can order the removal of a candidate's name from the ballot on this basis.
Assistant Attorney General Joel DiPippa prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE, Attorney General
MB:JMD/cyh